*This opinion is subject to revision before
publication in the Pacific Reporter*

**2015 UT 58**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of ALVIN R. LUNDGREN

UTAH STATE BAR,
*Appellee,*

*v.*

ALVIN R. LUNDGREN,
*Appellant.*

No. 20130739
Filed July 21, 2015

Second District, Morgan Dep't
The Honorable Noel S. Hyde
No. 120500019

Attorneys:

Billy L. Walker, Adam C. Bevis, Salt Lake City, for appellee

Alvin R. Lundgren, Mountain Green, pro se

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE LEE,
JUSTICE DURHAM, and JUDGE ROTH joined.

Having recused herself, JUSTICE PARRISH does not participate
herein; COURT OF APPEALS JUDGE STEPHEN L. ROTH sat.

JUSTICE HIMONAS, opinion of the Court:

### INTRODUCTION

¶ 1    Intentionally misappropriating a client's money is at or
near the top of the list of things a lawyer should never do. But that
is what Alvin Lundgren did when he took Janet Best's money
from his client trust account for his own purposes. Upon
discovering the defalcation, Ms. Best reported Mr. Lundgren to
the Utah State Bar Office of Professional Conduct (OPC).

Following an investigation, the OPC filed a complaint in district court against Mr. Lundgren. Based on his admitted misconduct, the district court granted the OPC's motion for summary judgment and disbarred Mr. Lundgren. Mr. Lundgren timely appealed. We affirm his disbarment and state again that a Utah attorney who intentionally misappropriates client funds will be disbarred unless the attorney can show truly compelling mitigating circumstances.

## BACKGROUND

¶ 2    Mr. Lundgren had been practicing law for twenty years when Ms. Best hired him to pursue a workers' compensation claim. In February 2009, Ms. Best settled her claim for $24,906. Per her instructions, Mr. Lundgren retained $2,500 of Ms. Best's share of the settlement proceeds in his client trust account in order to pay her outstanding medical bills. However, in July of 2010, Ms. Best's doctor, Carl Mattson, informed her that her medical bills remained outstanding. Ms. Best called Mr. Lundgren numerous times and left several messages, but Mr. Lundgren failed to respond.

¶ 3    Ultimately, in December of 2010, Ms. Best sent Mr. Lundgren a letter asking him to account for her settlement funds. She attached a copy of Dr. Mattson's bill. Mr. Lundgren did not reply, nor did he account for the $2,500 entrusted to him.

¶ 4    He later claimed to have lost Ms. Best's case file. As a result of Mr. Lundgren's failure to respond and failure to use the settlement funds as directed, Ms. Best filed a complaint with the Utah State Bar. On August 12, 2011, the OPC sent Mr. Lundgren notice of Ms. Best's informal complaint. As part of its investigation, the OPC asked Mr. Lundgren to provide bank records of the deposits and withdrawals made to and from his client trust account from March 2009 through October 2010. The OPC did not receive this information, although Mr. Lundgren claims that he sent it.

¶ 5    The OPC referred the case to a screening panel of the Ethics and Discipline Committee, which heard the matter on January 26, 2012. At the hearing, Mr. Lundgren admitted under oath that he had taken Ms. Best's money from his client trust account for his own personal use. He further testified that over the course of about four years, he had taken money belonging to

other clients from his client trust account to cover business and personal expenses.[1] None of Mr. Lundgren's clients authorized him to take their money from the trust account for his benefit.

¶ 6    At some point after receiving notice of Ms. Best's complaint, but prior to the hearing before the screening panel, Mr. Lundgren set up monthly payments of $300 to Dr. Mattson to pay Ms. Best's medical expenses—ostensibly because he did not have enough money to pay Ms. Best's medical bill in full. Mr. Lundgren ultimately accounted for Ms. Best's full settlement monies by paying Dr. Mattson's bill and reimbursing the rest of the money to her.

¶ 7    Following the hearing, the screening panel directed the OPC to file a formal complaint in district court against Mr. Lundgren, and the OPC did. The OPC then moved for summary judgment, which the district court granted. The court concluded that Mr. Lundgren violated rules 1.15(a) and (d) of the Utah Rules of Professional Conduct by misappropriating client funds and rule 8.1(b) by "knowingly fail[ing] to respond to a lawful demand for information" made by the OPC.[2]

¶ 8    Thereafter, the district court conducted a sanctions hearing "to receive relevant evidence in aggravation and mitigation." SUP. CT. R. PROF'L PRAC. 14-511(f). Following the Standards for Imposing Lawyer Sanctions of the Supreme Court Rules of Professional Practice—rule 14-607—the district court considered various mitigating factors, including Mr. Lundgren's (1) "absence of a prior record of discipline," (2) "good character and reputation," and (3) "remorse." The court then determined that none of the evidence presented was "truly compelling," and

---

[1] While Mr. Lundgren admits to the additional defalcations, he alleges that he lost the hard copy of his accounting records in a flood and the electronic copy due to a computer crash and, therefore, cannot fully account for his financial activity during the period in question.

[2] At oral argument in this matter, the OPC withdrew its claim under rule 8.1(b). Accordingly, we dismiss that charge of misconduct.

thus did not justify departure from the presumptive sanction of disbarment. *See* SUP. CT. R. PROF'L PRAC. 14-605. The court explicitly rejected Mr. Lundgren's claim that his financial hardship should be considered a mitigating factor. Before imposing sanctions, the court also considered aggravating factors, which included Mr. Lundgren's dishonesty, his pattern of misconduct, and his extensive experience in practicing law. The court imposed the sanction of disbarment for Mr. Lundgren's misconduct. He timely appealed.

## STANDARD OF REVIEW

¶ 9   Mr. Lundgren does not challenge the grant of summary judgment with regard to his violation of rule 1.15(a) and (d).[3] Accordingly, we are asked to review only the district court's decision to disbar Mr. Lundgren. Under the Utah Constitution, this court has the duty and the authority to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4. Generally, we do not overturn a district court's findings of fact unless they are "arbitrary, capricious, or plainly in error." *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997) (internal quotation marks omitted). However, "in light of our constitutional mandate and the unique nature of disciplinary actions," we review district court findings in attorney discipline matters with less deference. *Id.* (internal quotation marks omitted). In this area, we retain "the right to draw different inferences from the facts" in order to "make an independent determination" of the correctness of the discipline the district court imposed. *In re Discipline of Crawley,* 2007 UT 44, ¶ 17, 164 P.3d 1232 (internal quotation marks omitted); *see also In re Discipline of Corey,* 2012 UT 21, ¶ 23 n.13, 274 P.3d 972.

---

[3] Mr. Lundgren did challenge the propriety of the district court's grant of summary judgment on the rule 8.1(b) allegation. Because the OPC withdrew that charge at oral argument, we do not address it.

## ANALYSIS

### I. DISBARMENT WAS THE APPROPRIATE SANCTION FOR MR. LUNDGREN'S MISCONDUCT

¶ 10 The Utah Supreme Court Rules of Professional Practice govern, among other things, the ethical practice of law in the State of Utah and provide the standards for imposing sanctions on attorneys who violate the rules. *See* SUP. CT. R. PROF'L PRAC. 1.0 to 8.5 ("Rules of Professional Conduct"), 14-601 to 14-607 ("Standards for Imposing Lawyer Sanctions"). Chapter fourteen, article 6 provides the Utah State Bar with rules for imposing sanctions on attorneys who have "engaged in professional misconduct." *Id.* 14-603(a). These rules are designed to "maintain the high standard of professional conduct required of those who undertake the discharge of professional responsibilities as lawyers." *Id.* 14-602(b). Further, the rules allow judges "flexibility and creativity in assigning sanctions" when a lawyer has committed misconduct. *Id.* 14-602(d). A court should consider specific factors when imposing sanctions, including "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors." *Id.* 14-604(a)–(d).

¶ 11 Though the rules allow for flexibility in most cases, there are presumptive sanctions for the most egregious types of misconduct. Disbarment is the presumptive sanction when a lawyer either "knowingly engages in professional misconduct . . . with the intent to benefit the lawyer . . . and causes serious or potentially serious injury to a party" or "engages in serious criminal conduct, a necessary element of which includes . . . misappropriation, or theft." *Id.* 14-605(a)(1), (2). And though disbarment is the harshest sanction available in the realm of attorney misconduct—"the proverbial professional death-sentence," *In re Discipline of Corey*, 2012 UT 21, ¶ 40, 274 P.3d 972—we have long said that intentional misappropriation of client funds is one of, if not the most "severe" kind of misconduct in the legal profession. *In re Discipline of Grimes*, 2012 UT 87, ¶ 15, 297 P.3d 564. Misappropriation of client funds undermines the relationship between attorney and client and damages the legal profession as a whole. Indeed, this court and others have not minced words when addressing it, describing it as "always indefensible," *In re Discipline of Babilis*, 951 P.2d 207, 217 (Utah

1997); something "we cannot tolerate," *In re Discipline of Johnson*, 2001 UT 110, ¶ 14, 48 P.3d 881; a form of "ethical dereliction," *In re Blumenstyk*, 704 A.2d 1, 4 (N.J. 1997); "the gravest form of professional misconduct," *Att'y Grievance Comm'n v. Pattison*, 441 A.2d 328, 333 (Md. 1982); and an act that "reflects poorly on the entire legal profession and erodes the public's confidence in lawyers." *In re Disciplinary Action Against Rooney*, 709 N.W.2d 263, 270 (Minn. 2006). As we explained in *Babilis*, a seminal Utah case in this area, intentional misappropriation of client funds "strikes at the very foundation of the trust and honesty that are indispensable to the functioning of the attorney-client relationship and, indeed, to the functioning of the legal profession itself." 951 P.2d at 217.

¶ 12   Because intentional misappropriation of client funds is so deeply concerning and intolerable to our profession, an attorney who is guilty of it should be disbarred. The only exception to this rule occurs if an attorney can show "truly compelling mitigating circumstances." *In re Discipline of Ince*, 957 P.2d 1233, 1237 (Utah 1998); *Babilis*, 951 P.2d at 217. We have never explicitly defined the phrase "truly compelling mitigating circumstances," but we have said that the "mitigating factors must be significant," *Ince*, 957 P.2d at 1237–38, and should be construed "relatively narrowly." *Grimes*, 2012 UT 87, ¶ 40; *see also Corey*, 2012 UT 21, ¶ 37 n.17. Again, the standard for sanctioning such behavior is purposely strict in order to serve the public and the profession by maintaining the trust that is so critical to the attorney-client relationship.

*A. The "Truly Compelling Mitigating Circumstances"*
*Standard Is Not "Illusory"*

¶ 13   The modern standard for attorney sanctions in cases of intentional misappropriation was first set out by this court in *Babilis*, where we adopted the rule that "intentional misappropriation of client funds will result in disbarment unless the lawyer can demonstrate truly compelling mitigating circumstances." 951 P.2d at 217 (internal quotation marks omitted). Mr. Lundgren argues that the truly compelling mitigating circumstances standard is "illusory" and that we should depart from it in favor of a "balancing" or rehabilitative approach. However, his briefing on this point is unpersuasive and largely inadequate. *See* UTAH R. APP. P. 24(a)(9) ("The argument

shall contain the contentions and reasons of the appellant with respect to the issues presented . . . ."); *State v. Thomas*, 961 P.2d 299, 305 (Utah 1998) ("[R]ule 24(a)(9) requires not just bald citation to authority but development of that authority and reasoned analysis based on that authority."); *see also Water & Energy Sys. Tech., Inc. v. Keil*, 2002 UT 32, ¶ 21, 48 P.3d 888 ("[T]his court will not become simply a depository in which the appealing party may dump the burden of argument and research." (internal quotation marks omitted)). He fails to provide a reasoned argument for the reversal of our existing standard. We therefore decline to abrogate it.

¶ 14 Mr. Lundgren's argument begins with a list of various "background illustrative cases"—cases that are summarized without further exegesis. He asserts that the district court below was "unable" to find truly compelling mitigating circumstances "because there is no precedent in recent Utah Supreme Court case history." But in fact there have been a number of cases applying the "truly compelling mitigating circumstances" standard in recent years, though it is true that no attorney has yet met that standard. *See, e.g.*, *In re Discipline of Ennenga*, 2001 UT 111, 37 P.3d 1150; *Corey*, 2012 UT 21. Mr. Lundgren's primary argument appears to be, in essence, because no attorney who has misappropriated client funds since 1997 has been able to escape the presumptive sanction of disbarment by showing truly compelling mitigation, "there may be a problem with" the standard. We disagree.

¶ 15 The fact that no attorney in Utah to date has been able to show that he acted under truly compelling mitigating circumstances when he misappropriated client funds does not indicate that there is a problem with the standard, nor does it render the standard "illusory," "vague," or unenforceable. Nor do we agree with Mr. Lundgren that the standard is "worthless and of no material benefit." To the contrary, we find our strict standard for imposing sanctions in cases of intentional misappropriation to be extremely explicit, worthy, and highly beneficial to the legal profession and the public.

¶ 16   In arguing that our standard is "illusory," Mr. Lundgren grasps at a variety of sources, none of which are on point.[4] Mr. Lundgren asserts that our standard sets the bar for showing mitigation "so impossibly high" that no attorney will ever meet it. We disagree, but in any event we need not address the question of a hypothetical case of truly compelling mitigation because Mr. Lundgren has not shown that *he* acted under mitigating circumstances. We agree with the OPC that the truly compelling mitigation standard "is a high burden for attorneys to meet. That does not mean it is an illusion."

¶ 17   Mr. Lundgren asserts that this case presents us with "an opportunity" to "abandon" the truly compelling mitigation standard "and return to a more rational" test. We decline this opportunity because we find the test perfectly rational. As we explained when we adopted the standard,

> [t]he honesty and loyalty that all lawyers owe their clients are irrevocably shattered by an intentional act of misappropriation, and the corrosive effect of such acts tends to undermine the foundations of the profession and the public confidence that is essential to the functioning of our legal system. Lawyers should be on notice that an intentional act of misappropriation of a client's funds is an act that merits disbarment.

*Babilis*, 951 P.2d at 217. We uphold that standard today and reiterate that an attorney who intentionally misappropriates client

---

[4] These include: a death penalty case dealing with the standard for attorney performance in the context of a claim of ineffective assistance of counsel, *Menzies v. Galetka*, 2006 UT 81, 150 P.3d 480; a case dealing with illusory promises made by a prosecutor pursuing a plea deal; a case in contract law standing for the proposition that illusory promises will defeat an enforceable contract; and finally, a statutory interpretation case in which we stated that we reject interpretations that render statutory rights "'meaningless or illusory,'" *see Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 46, 84 P.3d 1201.

funds will be disbarred unless he or she can show truly compelling mitigating circumstances.

### B. Mr. Lundgren Failed to Present Any Truly Compelling Mitigating Circumstances

¶ 18 Mr. Lundgren testified under oath that he misappropriated unearned money from his client trust account for his business and personal use. On appeal, Mr. Lundgren appears to argue that he showed truly compelling mitigating circumstances in two ways: (1) his conduct was not as bad as other disbarred attorneys and (2) he "repaid all amounts." We uphold the district court's determination that Mr. Lundgren has failed to show truly compelling circumstances that would mitigate his misconduct.[5]

¶ 19 "[T]he standard for departing from the presumptive sanction of disbarment is a 'truly compelling' mitigating factor in the circumstances of [this] case, not the comparative seriousness of other cases." *Ennenga*, 2001 UT 111, ¶ 16. Mr. Lundgren argues that because other attorneys have misappropriated more money than he did, he should not be disbarred. He contends the "relative severity" of his conduct was less than that of other attorneys who have been disbarred—because he took less money—and therefore he should receive a lesser punishment than disbarment. These arguments fail. Rule 14-605, which governs the imposition of sanctions, does not suggest that the amount of money misappropriated has any bearing on the seriousness of the misconduct. *See* SUP. CT. R. PROF'L PRAC. 14-605(a)(2)–(3) (calling for disbarment when a lawyer "engages in serious criminal conduct . . . which includes . . . misappropriation" or "engages in any other intentional misconduct involving . . . deceit"). Moreover, we review each case of misconduct individually—the relative seriousness of other cases of attorney misconduct has no

---

[5] The district court considered the mitigating factors presented by Mr. Lundgren, including (1) "[a]bsence of a prior record of discipline," (2) "[g]ood character and reputation," and (3) "[r]emorse." The court did not find that any of these were truly compelling. We agree.

bearing on the proper resolution of this case. *Ennenga*, 2001 UT 111, ¶ 16.

¶ 20 Mr. Lundgren points to *Utah State Bar v. Jardine*, a case in which the attorney, Mr. Jardine, charged unreasonable fees, deposited client retainers in his operating account before they were earned, and committed various other violations, but was only suspended. 2012 UT 67, ¶¶ 1, 83, 289 P.3d 516. Mr. Lundgren claims that his own misconduct "was far less severe." We are not persuaded by this argument. Again, as we explained in *Ennenga*, we do not compare severity across cases. 2001 UT 111, ¶ 16. Mr. Lundgren cannot justify his unlawful and unethical conduct by noting that he could have done worse.

¶ 21 Moreover, *Jardine* is distinguishable because Mr. Jardine's misconduct, though unacceptable, did not rise to the level of knowing and intentional misappropriation of client funds. 2012 UT 67, ¶¶ 10, 31–32. Mr. Jardine's case involved mishandling client funds—not stealing them (a subtle nuance perhaps, but an important one). *Id.* ¶¶ 48–50. Mr. Jardine was charging his clients large "nonrefundable" retainers, which he would deposit directly into his operating account—and which he argued were earned upon receipt. *Id.* ¶ 48. In deeming this misconduct, we explained that although it is conceivable that an attorney—perhaps due to the benefit conferred by the person's "towering reputation"—might earn a client's retainer fee the moment she receives it, Mr. Jardine did not. *Id.* ¶ 50. We thus concluded it was misconduct under rule 1.15(a) for Mr. Jardine to deposit client retainers directly into his operating account. *Id.* ¶ 53. Mr. Lundgren, unlike Mr. Jardine, knowingly took funds that were not only unearned, but would never *be* earned, and were in fact earmarked for another purpose, namely, to pay Ms. Best's medical bills.

¶ 22 It is true that Mr. Lundgren ultimately restored Ms. Best's funds, but this factor is not mitigating where there is no evidence to show that remorse was his motivation for restoring the funds. Tellingly, Mr. Lundgren did not self-report his unethical conduct or restore the funds to Ms. Best until after she had lodged a complaint with the OPC. Thus, it seems likely that his restoration of the funds was merely an attempt to avoid punishment. Under rule 14-607(c)(1) of the Supreme Court Rules

of Professional Practice, "compelled restitution" cannot be considered a mitigating factor.

¶ 23 And Mr. Lundgren misses the ethical point entirely when he attempts to minimize his misappropriation by asserting that it is "philosophically debatable if the client does not know of the removal of funds over which the client does not have control, whether there is actual injury." It is not philosophically debatable whether stealing money is okay so long as the victim never finds out. And in any event, Ms. Best *did* find out and was certainly inconvenienced in a variety of ways. Not least of these is the fact that Mr. Lundgren did not pay her medical bills as he was instructed (he was instead forced to set up a payment plan with the doctor much later), and Ms. Best had to endure the disappointment and frustration of dealing with the doctor's collection attempts. We are glad that Mr. Lundgren was ultimately able to pay Ms. Best back, but "he did not make repayment until he was forced to do so by threat of suit . . . and after [the client] had made an informal complaint." *Ennenga*, 2001 UT 111, ¶ 13. "The repaying of [Ms. Best's] money, though the right thing to do, was not accomplished in a way that mitigates the misappropriation." *Id.*

¶ 24 Because Mr. Lundgren has failed to show truly compelling mitigating circumstances, we need not discuss the aggravating factors in detail. Although we do note that Mr. Lundgren's dishonesty, his pattern of misappropriation, his long experience in the practice of law, his inability to accept the consequences of his actions, and his attempts to justify his misconduct are all aggravating factors. In sum, disbarment is the appropriate sanction for Mr. Lundgren's misconduct.

## CONCLUSION

¶ 25 Today we reaffirm that the sanction for intentional misappropriation of client funds is disbarment unless an attorney can show truly compelling mitigating circumstances. Mr. Lundgren intentionally misappropriated client funds and failed to show any truly compelling mitigation. We therefore affirm the district court's order of disbarment.