**2021 UT 39**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

IN THE MATTER OF THE DISCIPLINE OF MARIA C. SANTANA,

MARIA C. SANTANA,
*Appellant,*

*v.*

OFFICE OF PROFESSIONAL CONDUCT,
*Appellee.*

No. 20191056
Heard April 21, 2021
Filed July 29, 2021

On Direct Appeal

Third District, Salt Lake
The Honorable William Kendall
No. 160906106

Attorneys:

Steven C. Russell, Salt Lake City, for appellant

Emily A. Lee, Adam C. Bevis, Salt Lake City, for appellee

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1 Maria Santana, a member of the Utah State Bar, appeals the outcome of an attorney discipline case in which the district court suspended her from the practice of law for one year. Ms. Santana does not dispute that she violated the Utah Rules of Professional Conduct. Rather, she challenges the sufficiency of the evidence supporting the court's finding that she *knowingly* did so.

¶2   Ms. Santana contends that the Office of Professional Conduct (OPC) presented no evidence to support the court's finding that she acted knowingly, so the court erred in suspending her. She asks this court to reverse the district court's order of suspension and enter a lesser sanction. We decline to do so, however, because Ms. Santana's own testimony indicates that she acted knowingly.

¶3   Ms. Santana also argues that the district court's decision to depart from the presumptive sanction of a six-month suspension and impose a one-year suspension is not supported by evidence in the record. We reject this argument because the court's analysis of aggravating and mitigating factors is either directly supported by or based on reasonable inferences from the record. So we affirm the district court's imposition of a one-year suspension.

## Background

¶4   The OPC initiated this disciplinary proceeding following Ms. Santana's representation of a client, Ms. Venegas, in a personal injury case. At the outset of her representation of Ms. Venegas, Ms. Santana asked the opposing party for a settlement of $60,000. That party responded with a counteroffer of about $18,700. Instead of taking the offer, Ms. Santana filed a complaint on behalf of her client.

¶5   During discovery, Ms. Santana was supposed to provide opposing counsel with initial disclosures by March 8, 2013, but she missed this deadline. Ten days later, she emailed Ms. Venegas, asking for information relevant to the case. In this email, Ms. Santana gave her client a deadline to respond and said she would withdraw if Ms. Venegas did not respond within that timeline.

¶6   Having not heard from Ms. Venegas, Ms. Santana withdrew from representing her on March 20, 2013, and told Ms. Venegas to pick up her client file. This withdrawal was short-lived. Ms. Santana filed a notice of appearance the next day and resumed her representation of Ms. Venegas.

¶7   A week later, on March 27, 2013, Ms. Santana emailed opposing counsel and asked to extend the deadline for initial disclosures to April 10, 2013. Opposing counsel acquiesced, but Ms. Santana never told her client about this new deadline.

¶8   Although Ms. Santana had asked for an extension, she apparently missed the extended deadline too, because more than a month later, on May 15, 2013, opposing counsel sent an email asking Ms. Santana for the initial disclosures that had been due the month before. In this email, opposing counsel also asked Ms. Santana whether her client still wanted to proceed with the case.

¶9   Six weeks later, on June 27, 2013, opposing counsel sent another email requesting the initial disclosures. He also notified Ms. Santana that he would file a motion to dismiss if he did not receive the disclosures by July 3, 2013.

¶10 Around this time, Ms. Santana decided she would not respond to opposing counsel or take any further action with the case until Ms. Venegas provided her with additional information about the case. Between March 21, 2013, and August 7, 2013, Ms. Santana did not consult with her client regarding her decision to take no further action or the likelihood that the case could be dismissed if Ms. Santana did so. Ms. Santana believed that her client was reluctant to provide certain information about the case, but she did not consult with her client about alternatives to furnishing the information she had requested, such as lowering the settlement proposal.

¶11 Ms. Santana's deliberate course of inaction continued until August 8, 2013, when opposing counsel filed a motion to dismiss. Ms. Santana did not respond to this motion nor adequately communicate with her client about her options at this stage in the proceeding. The court dismissed Ms. Venegas's case with prejudice.

¶12 Following the dismissal of the case, Ms. Venegas tried to contact Ms. Santana through various attorneys and paralegals. She called and left messages requesting her client file and information about her case. She did not understand that she could no longer pursue her claim. Ms. Santana did not respond to these messages.

¶13 Ms. Venegas hired a new attorney and, in September 2014, he left voicemail messages and sent a letter requesting Ms. Venegas's file. Ms. Santana responded to the messages a month later, but by then Ms. Venegas's new attorney had declined to continue to represent her for reasons unrelated to Ms. Santana's inaction. Ms. Venegas then hired yet another attorney, who also requested her file from Ms. Santana. But Ms. Santana did not return the file until long after the OPC became involved.

¶14 The OPC contacted Ms. Santana by letter the following year, in May and July 2015, requesting information regarding her representation of Ms. Venegas. Ms. Santana did not respond until shortly before the date of a screening panel hearing held on February 2, 2016. On that date, she finally gave Ms. Venegas her client file.

¶15 Following the screening panel, the OPC filed a formal complaint, alleging several violations of the Rules of Professional Conduct. The OPC alleged that Ms. Santana had failed to serve initial disclosures, failed to pursue her client's case, failed to respond

to her client's requests for information, failed to inform her client of the motion to dismiss, failed to give reasonable notice to her client that she was no longer representing her, failed to return her client's file, and failed to respond to the OPC's requests for information regarding the disciplinary matter.

¶16 In response to the OPC's complaint, Ms. Santana filed a motion to stay her disciplinary hearing on the basis that she had just filed a civil action against Ms. Venegas. But the court denied her motion to stay, and Ms. Santana ultimately chose not to pursue her civil case against Ms. Venegas.

¶17 The court held an adjudication hearing in response to the OPC's complaint. During the course of litigation, Ms. Santana missed deadlines, asked for extensions, and raised issues at the last minute. At the hearing, the court entered evidence and heard testimony regarding Ms. Santana's representation of Ms. Venegas and concluded that Ms. Santana had committed several rules violations.

¶18 First, the court concluded that she had violated rule 1.3 of the Utah Rules of Professional Conduct because she knew the initial disclosures for Ms. Venegas's case were due, but she failed to act within that deadline even after obtaining an extension and likewise failed to timely respond to opposing counsel's emails.

¶19 Second, the court concluded that Ms. Santana had violated rule 1.4(a) because she had not kept Ms. Venegas reasonably informed of the due dates for initial disclosures and her decision not to take further action in the case until Ms. Venegas provided the information she had requested. The court further found that Ms. Santana failed to respond to the motion to dismiss and inform Ms. Venegas about it.

¶20 Third, the court concluded that Ms. Santana had violated rule 1.16(d) by failing to fully explain to her client the effect of a dismissal with prejudice and any deadlines or requirements for appeal and had further failed to timely return Ms. Venegas's client file despite repeated requests that she do so.

¶21 Last, the court concluded that Ms. Santana had violated rule 8.1(b) by failing to respond to the OPC's requests for information about her representation of Ms. Venegas until just before the date of the screening panel. The court entered these conclusions regarding Ms. Santana's misconduct and ordered a sanctions hearing to consider evidence of aggravating and mitigating circumstances.

¶22 The court held the sanctions hearing in August 2019. It entered its findings of fact from the adjudication hearing and considered additional evidence and testimony regarding a disciplinary order of admonition entered against Ms. Santana in 1999 and the civil lawsuit Ms. Santana had filed against Ms. Venegas. Based on its findings of fact from both the adjudication hearing and the sanctions hearing, the court concluded that Ms. Santana had violated the rules knowingly.

¶23 The court found that Ms. Santana knew the initial disclosures were due and the motion to dismiss was pending, but she neither responded to the motion nor consulted with her client about the case at this time. The court further found that, after the case was dismissed, Ms. Santana knew that Ms. Venegas wanted information about the status of the case and had requested her client file, but Ms. Santana failed to keep Ms. Venegas informed and failed to give her a copy of her client file until long after the OPC became involved. The court also found that Ms. Santana knowingly failed to respond to the OPC's requests for information within the deadlines provided to her. Based on these facts, the court concluded that Ms. Santana was aware of the circumstances surrounding each rule violation.

¶24 Next, the court found that Ms. Santana had caused actual harm to Ms. Venegas because she received nothing for her case when it was dismissed with prejudice, and Ms. Santana's failure to act diligently, keep her client informed, and return her client's file had undermined public trust in the profession and in the legal system. The court also concluded that Ms. Santana's failure to timely respond to the OPC's requests for information had further undermined public trust in the legal profession.

¶25 Based on its conclusion that Ms. Santana had knowingly violated the rules and had harmed her client and public trust in the legal profession, the court concluded that the presumptive level of discipline under rules 14-605(b)(1) and 14-603(c) of the Standards for Imposing Lawyer Sanctions was suspension for six months.[1] The court then considered whether any aggravating and mitigating

---

[1] Rules 14-605 and 14-603 were renumbered as 11-583 and 11-581 and renamed the Supreme Court Rules of Professional Practice in December 2020. We refer to the rules as they were numbered at the time of the district court's decision.

circumstances warranted a departure from the presumptive sanction.

¶26 With respect to aggravating circumstances, the court concluded that Ms. Santana's self-serving delay in procuring Ms. Venegas's client file, her pattern of inaction and failure to communicate with her client, her failure to acknowledge the wrongful nature of her misconduct, and her failure to make a good faith effort to make restitution all weighed heavily in favor of departing from the presumptive sanction and imposing a one-year suspension instead. The court also noted that Ms. Santana had a previous record of attorney discipline in 1999.

¶27 In its consideration of mitigating factors, the court determined that Ms. Santana's prior discipline was sufficiently remote in time to act as a mitigating factor. Otherwise, the court held that Ms. Santana had failed to establish any other mitigating factors. So the court concluded the sanctions phase of the proceeding and suspended Ms. Santana from the practice of law for one year.

¶28 Following the sanctions hearing, Ms. Santana appealed. Ms. Santana argues that the court erred in concluding she had acted knowingly. In her view, the OPC did not present evidence regarding her state of mind, so the court must have erred in imposing the one-year suspension. She also argues that the court's analysis of aggravating factors is not supported in the record.

¶29 We have jurisdiction to review this case pursuant to Utah Code section 78A-3-102(3)(c).

**Standard of Review**

¶30 In attorney discipline cases, "we must treat the ultimate determination of discipline as our responsibility."[2] So we must "make an independent determination of the correctness of the discipline the district court imposed."[3]

¶31 In making such a determination, we "ordinarily presume findings of fact to be correct and will not overturn them 'unless they

---

[2] *In re Discipline of Babilis*, 951 P.2d 207, 213 (Utah 1997).

[3] *Utah State Bar v. Lundgren* (*In re Discipline of Lundgren*), 2015 UT 58, ¶ 9, 355 P.3d 984 (citation omitted) (internal quotation marks omitted).

are arbitrary, capricious, or plainly in error.'"[4] But we also "reserve the right to draw inferences from basic facts which may differ from the inferences drawn by the [lower tribunal]."[5]

**Analysis**

¶32 On appeal, Ms. Santana does not challenge the district court's conclusion that she violated the rules. Instead, she disputes the court's conclusion that she *knowingly* did so. Her argument is simple. She asserts that the OPC failed, at both the adjudication and sanctions hearings, to present evidence regarding her state of mind during the course of her representation of Ms. Venegas. So, in her view, the court erred in finding that she acted knowingly, and thus the court erred in imposing a one-year suspension under rule 14-605(b) of the Standards for Imposing Lawyer Sanctions. She also argues that the evidence presented does not support the court's analysis of aggravating and mitigating factors.

¶33 The OPC counters that the evidence presented supports the necessary elements for imposing a one-year suspension. In its view, the record supports the district court's conclusion that Ms. Santana acted knowingly. And the court's conclusion that Ms. Santana's misconduct caused harm, together with the aggravating factors present in the record, supports a one-year suspension.

¶34 First, we consider whether the OPC presented evidence to support the court's determination that Ms. Santana acted knowingly for each rule violation. We conclude that the court did not err in this finding because Ms. Santana's own testimony demonstrates she was aware of the circumstances surrounding her misconduct.

¶35 Second, we consider whether the record supports the court's findings regarding aggravating circumstances and its ultimate decision to impose a one-year suspension. We conclude that the record does, so we affirm the imposed one-year suspension.

I. The Court Did Not Err in Concluding that Ms. Santana Acted Knowingly

¶36 First, we address Ms. Santana's argument that the court erred in concluding that she violated the rules knowingly. She argues the OPC failed to present evidence regarding her mental state

---

[4] *Babilis*, 951 P.2d at 213 (quoting *In re Knowlton*, 800 P.2d 806, 808 (Utah 1990)).

[5] *Id.* (alteration in original) (citation omitted).

at both the adjudication and sanctions phases of the disciplinary proceeding. We disagree. Ms. Santana's own testimony indicates that she was aware of the circumstances surrounding her misconduct.

¶37  For professional misconduct, rule 14-601(f)[6] of the Standards for Imposing Lawyer Sanctions defines a knowing mental state as "the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result." Conscious awareness of the circumstances is what separates knowing misconduct from unwitting or negligent misconduct. For example, in *In re Discipline of Bates*, we explained that an attorney who is aware he is misusing his client's money is more culpable than an attorney who fails to realize he is doing so.[7] So "[w]hile the negligent use of client money is reprehensible, and certainly warrants sanctions," *knowing* misappropriation of client money typically warrants a greater sanction.[8]

¶38 Ms. Santana argues that, because the word "knowing" is absent from the court's findings following the adjudication phase of the proceeding, the OPC must have failed to present evidence showing that she acted knowingly. But the OPC did not need to present direct evidence of Ms. Santana's mental state to prove that she acted knowingly.

¶39  We have held that "[c]ircumstantial evidence is particularly useful in establishing [a defendant's mental state] because direct evidence of [mental state] is rarely available."[9] So "[c]ircumstantial evidence [may be used] to find [mental state] on the basis of reasonable inferences drawn from the evidence."[10] But in Ms. Santana's case, the court did not need to rely on inferences or circumstantial evidence, because Ms. Santana testified that she had been aware of the circumstances surrounding each rule violation.

---

[6] Rule 14-601(f) was renumbered as 11-502(j) in December 2020.

[7] 2017 UT 11, ¶ 24, 391 P.3d 1039.

[8] *Id.*

[9] *Salt Lake City v. Carrera*, 2015 UT 73, ¶ 11, 358 P.3d 1067.

[10] *In re Discipline of Gilbert*, 2016 UT 32, ¶ 44, 379 P.3d 1247 (first and second alterations in original) (quoting *Carrera*, 2015 UT 73, ¶ 11) (inferring that an attorney acted knowingly when he failed to comply with a court order after receiving a copy of it).

¶40 First, under rule 1.3 of the Utah Rules of Professional Conduct, Ms. Santana had a duty to "act with reasonable diligence and promptness in representing" Ms. Venegas. The district court concluded that Ms. Santana violated this rule when she failed to provide initial disclosures to opposing counsel despite asking for an extension. During the adjudication phase of the proceeding, Ms. Santana testified that she was aware of the missed deadlines at the time. From this, the court correctly concluded that Ms. Santana was aware of the circumstances when she failed to act with reasonable diligence in violation of rule 1.3.

¶41 Second, rule 1.4(a)(3) imposed a duty on Ms. Santana to keep Ms. Venegas "reasonably informed about the status of" her case. The court concluded that Ms. Santana had failed to keep Ms. Venegas informed when she failed to tell her about the extended deadline for initial disclosures and the dismissal motion filed by opposing counsel when she missed that deadline. During the adjudication hearing, in addition to testifying that she knew about the missed deadlines, Ms. Santana also testified that she was aware of the motion to dismiss when it was filed. From this, the court correctly concluded that Ms. Santana was aware of the developments in Ms. Venegas's case but nevertheless failed to pass that information on as required by rule 1.4(a).

¶42 Third, under rule 1.16(d), "[u]pon termination of representation, a lawyer . . . must provide, upon request, the client's file to the client." The court concluded that Ms. Santana violated this rule by failing to give Ms. Venegas her file when the case was dismissed. Based on Ms. Santana's own testimony, the court found that she knew Ms. Venegas had requested her file by September 2014, but Ms. Santana failed to return it to her until February 2016. So it is clear that Ms. Santana knowingly violated rule 1.16(d) by failing to return Ms. Venegas's file upon request.

¶43 Last, under rule 8.1(b), Ms. Santana had a duty not to "knowingly fail to respond to a lawful demand for information from" the OPC. The court found that the OPC had sent Ms. Santana several letters requesting information regarding her representation of Ms. Venegas. And although Ms. Santana knew about at least one of these letters, she did not timely respond to the OPC's requests for information. So the record clearly supports the court's conclusion that Ms. Santana knowingly violated rule 8.1(b).

¶44 In summary, Ms. Santana's own testimony indicates she was aware of the circumstances surrounding each instance of misconduct. She knew about the deadlines for initial disclosures but

failed to act within those deadlines. She knew that Ms. Venegas's case was headed towards dismissal, but she did not tell her or respond to the motion to dismiss. When Ms. Venegas asked for her file, Ms. Santana failed to give it to her. And Ms. Santana knew the OPC had requested information from her, but she did not timely respond. So although the court never used the word "knowing" in its findings of fact, it clearly had sufficient evidence to conclude that Ms. Santana knowingly violated the rules of professional conduct.

## II. The Court Did Not Err in Imposing a One-year Suspension

¶45 Having decided that the district court did not err in concluding that Ms. Santana knowingly violated the Rules of Professional Conduct, we now address her argument that the court erred in departing from the presumptive sanction of a six-month suspension. She argues that the aggravating factors discussed by the court "are not found in any testimony or evidence." We disagree, however, because each aggravating factor is either directly supported by the evidence or reasonably inferred from the record.

¶46 Rule 14-605(b)(1) of the Standards for Imposing Lawyer Sanctions states that suspension is appropriate when a lawyer "knowingly engages in professional misconduct . . . and causes injury or potential injury to a party, the public, or the legal system." During the sanctions phase of Ms. Santana's disciplinary proceeding, the district court determined that a six-month suspension was appropriate given the rules Ms. Santana had violated, her knowing mental state, and the harm she had caused to Ms. Venegas and public trust in the legal profession. The court then considered any aggravating or mitigating circumstances to determine whether Ms. Santana's conduct warranted a more severe sanction.

¶47 For a court to depart from the presumptive sanction, we have stated that the aggravating factors must be significant.[11] But Ms. Santana does not challenge the significance of the aggravating factors on which the court relied. Rather, she argues that the court's findings have no basis in the record. We disagree because the court's findings are either directly supported by the evidence or reasonably inferred from the record.

---

[11] *In re Discipline of Ince*, 957 P.2d 1233, 1237–39 (Utah 1998) (concluding that an attorney should be disbarred after he "knowingly violated the rules of professional conduct and stole money to support a lifestyle beyond his means").

¶48 The court considered a number of aggravating circumstances in its analysis. First, it noted that Ms. Santana had in 1999 been disciplined in Utah. But this was mitigated by the fact that the misconduct had occurred so many years before.

¶49 Second, the court considered Ms. Santana's failure to return Ms. Venegas's client file and respond to the OPC's requests for information. The court found that Ms. Santana had acted with a dishonest or selfish motive by prioritizing her own self-protection over the interests of the legal profession and her client. Although the OPC did not present direct evidence of Ms. Santana's motives, the court reasonably inferred that Ms. Santana had prioritized her self-protection by waiting so long to return Ms. Venegas's client file and provide information to the OPC about her misconduct.

¶50 Third, the court found that Ms. Santana had engaged in a pattern of misconduct by violating several rules multiple times. As mentioned above, Ms. Santana does not dispute that she violated the rules, so she does not challenge this finding on appeal. Regardless, the court's finding is supported by the facts underlying each of the rule violations discussed above.

¶51 Fourth, the court found that Ms. Santana failed to acknowledge the wrongful nature of her misconduct. Rather, she blamed Ms. Venegas and made excuses. The court also noted that Ms. Santana was not always forthcoming during the disciplinary proceeding. The court supported these findings with a reference to the fact that Ms. Santana did not timely respond to the OPC's requests and failed to fully cooperate in the disciplinary process.

¶52 Fifth, the court considered Ms. Santana's twenty-three years of experience as a lawyer. The court found that, despite Ms. Santana's testimony that she had limited experience with personal injury cases, she nevertheless had enough civil litigation experience to know about initial disclosures and motions to dismiss. So her misconduct was not excusable as a rookie mistake.

¶53 Last, the district court was concerned that Ms. Santana had failed to make a good faith effort to make restitution for the missteps in her representation of Ms. Venegas. "Rather than provide some initial disclosures, seek a settlement or some other mitigating action," Ms. Santana did nothing to pursue Ms. Venegas's interests. And after she terminated her representation of Ms. Venegas, Ms. Santana failed to return Ms. Venegas's file and eventually filed a lawsuit against her for breach of contract. At the sanctions phase of the proceeding, Ms. Santana did not present sufficient evidence to justify her delay in returning Ms. Venegas's file.

¶54 After reviewing the record, we reject Ms. Santana's argument that the court's discussion of aggravating factors is not supported in the record. Each factor the court discussed is either directly supported by the evidence or reasonably inferred from the record. So we affirm the court's imposition of a one-year suspension.

## Conclusion

¶55 We reject Ms. Santana's argument that the court erred in concluding she knowingly violated the rules of professional conduct, because her own testimony indicates that she was aware of the circumstances surrounding her misconduct. We also reject her argument that the court's analysis of aggravating factors is unsupported in the record, because each factor is either directly supported by the evidence or reasonably inferred from the record. We affirm the district court's imposition of a one-year suspension.

———————