*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 41**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent*,

*v.*

MICHAEL JERRY FELTS,
*Petitioner*.

No. 20230654
Heard September 6, 2024
Filed November 29, 2024

On Certiorari to the Utah Court of Appeals

Third District Court, West Jordan
The Honorable L. Douglas Hogan
No. 151400209

Attorneys:

Sean D. Reyes, Att'y Gen., Emily Sopp, Asst. Solic. Gen.,
Salt Lake City, for respondent

Nathalie S. Skibine, Salt Lake City, for petitioner[1]

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the
Court in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
JUSTICE HAGEN, and JUSTICE POHLMAN joined.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1  Michael Jerry Felts pled guilty, in 2015, to one count of assault against a police officer and one count of failure to stop or

---

[1] After his counsel filed the reply brief in this matter, Michael Jerry Felts asked this court to allow him to represent himself. We granted Felts's request.

respond at the command of police. The State sought restitution against Felts for the damage caused to at least one police vehicle during the police pursuit of Felts. At his sentencing, the district court referred the question of restitution to the Board of Pardons and Parole (the Board). In June 2021, the Board ordered Felts to pay restitution. At that time, Utah law allowed the Board to issue restitution orders and prohibited courts from reviewing them.

¶2    After Felts's sentencing, but before the Board issued its restitution order, the Utah Legislature changed Utah's restitution scheme. The amendments eliminated the Board's authority to issue restitution orders and removed restitution from the list of Board determinations that were final and not subject to judicial review.

¶3    Felts objected to the Board's restitution order in the district court. The court held that it lacked jurisdiction to review the Board's order. The court of appeals affirmed. Felts argues that the amendments give the district court the authority to review the Board's restitution order and that the amendments can be applied retroactively to his case. We disagree with Felts's first argument and, as a result, need not reach his second. We affirm the court of appeals.

## BACKGROUND

¶4    In June 2015, Felts pled guilty to one count of assault against a police officer and one count of failure to stop or respond at the command of police. The district court sentenced Felts to zero to five years in Utah State Prison on each count, to be served concurrently.

¶5    The State sought restitution against Felts for the damage caused to at least one police vehicle during the police pursuit of him. At sentencing, the district court left the question of restitution open, stating that any "restitution will be handled by the Board."

¶6    On June 8, 2021, the Board determined that Felts owed restitution and ordered him to pay $9,415.28. The order also stated that "[w]hen entered on the Court's Docket, this Order shall constitute a lien against the Defendant and is subject to the Rules that apply in any Civil Judgment." The Board asked the district court to enter the restitution order on its docket, which the court did on June 10, 2021.

¶7    Felts filed a pro se objection to the Board's restitution order in the district court. He claimed that "the state ha[d] no claim to restitution[,] as insurance ha[d] already paid." The district court

then held a restitution hearing, at which Felts was represented by counsel. The parties stipulated to a continuance of the hearing.

¶8   Felts's counsel then filed an objection to the Board's restitution order based upon changes to Utah's restitution scheme that took effect in July 2021. Felts argued that after the statutory changes, the Board no longer had authority to make restitution determinations. Felts reasoned that district courts had sole authority to calculate and order restitution. And he claimed that the statutory amendments could be read to permit district courts to review Board-issued restitution orders. Consequently, he asked the district court to review the Board's restitution order and enter its own to replace the Board's.

¶9   At the time of both Felts's sentencing in June 2015 and when the Board issued its restitution order in June 2021, Utah Code section 77-27-5(1) gave the Board the authority to determine when certain defendants may be ordered to pay restitution.[2] Utah Code section 77-27-5(3) prohibited courts from reviewing Board-issued restitution orders. The provision specifically stated that "[d]ecisions of the board in cases involving paroles, pardons, commutations or terminations of sentence, *restitution*, or remission of fines or forfeitures are final and are not subject to judicial review." UTAH CODE § 77-27-5(3) (2015) (emphasis added); *id.* § 77-27-5(3)(a) (West, Westlaw through 2024 4th Spec. Sess.) (effective May 5, 2021) (emphasis added).

¶10 The Utah Legislature later amended Utah Code section 77-27-5 and enacted new restitution provisions in the Crime Victims Restitution Act. *See id.* § 77-27-5 (2021) (effective July 1,

---

[2] The statutory language read:

> The Board . . . shall determine by majority decision when and under what conditions, subject to this chapter and other laws of the state, persons committed to serve sentences in class A misdemeanor cases at penal or correctional facilities which are under the jurisdiction of the Department of Corrections, and all felony cases except treason or impeachment or as otherwise limited by law, may be . . . ordered to pay restitution . . . .

UTAH CODE § 77-27-5(1)(a) (2015). The Board retained that authority in June 2021. *See id.* § 77-27-5(1)(b) (West, Westlaw through 2024 4th Spec. Sess.) (effective May 5, 2021).

2021); *see id.* §§ 77-38b-101 to -402 (2021) (effective July 1, 2021).[3] After the amendments became law, Utah Code section 77-27-5(1) no longer gave the Board authority to determine restitution.

¶11   The amendments also removed restitution from the list of Board decisions that are final and not subject to judicial review. After the amendments,

> [a] decision by the board is final and not subject for judicial review if the decision is regarding: (i) a pardon, parole, commutation, or termination of an offender's sentence; (ii) the modification of an offender's payment schedule for restitution; or (iii) the remission of an offender's criminal accounts receivable or a fine or forfeiture.

*Id.* § 77-27-5(3)(a).

¶12   The district court denied Felts's objection to the restitution order. The court "decline[d] to address restitution[,] finding that the [c]ourt lack[ed] jurisdiction to do so. That [the court was] not authorized to do so."

¶13   Felts appealed. He argued to the court of appeals that the amendments gave district courts the power to review Board restitution orders and that the amendments applied retroactively to his restitution order.

¶14 The court of appeals disagreed on both grounds and affirmed in an unpublished order. The court based its holding on "a plain reading of the [restitution] statutes under ordinary statutory interpretation principles." Specifically, the court concluded that the amendments contained an effective date and failed to declare that they were meant to be retroactive. Also, while the amendments "demonstrate[d] the legislature's intent to consolidate the authority to determine restitution in the district courts[,] . . . the removal of restitution from the list of matters beyond judicial review [wa]s merely for clarity and consistency. It d[id] not operate as an independent grant of judicial review."

---

[3] We refer to the Legislature's changes, collectively, as "the amendments." We also note that because the Legislature has not made substantive changes to the amended provisions that we refer to in this opinion, we cite to the current versions of those statutes from this point on.

¶15 Felts then filed a petition for writ of certiorari. At that time, counsel represented Felts. After we granted his petition, and after all briefs were filed in this case, Felts moved to represent himself. An affidavit demonstrating that Felts's waiver of the right to appointed appellate counsel was knowing, voluntary, and intelligent accompanied the motion. The State did not oppose. We permitted Felts to proceed pro se.[4]

### ISSUE AND STANDARD OF REVIEW

¶16 Felts argues that the court of appeals erred when it affirmed the district court's determination that it lacked the authority to review the Board's restitution order. We review the

---

[4] Felts then filed five motions. These are: (1) a motion reporting misconduct; (2) a motion requesting sanctions against the Board; (3) another motion requesting sanctions against the Board; (4) a motion alleging misconduct and requesting sanctions against the Board, its counsel, and the State's counsel; and (5) a motion resubmitting one of his motions for sanctions against the Board.

Felts asks that we impose sanctions against the Board for alleged violations of law. He also asks us to investigate the alleged misconduct of, and impose sanctions against, Utah's Attorney General and the Board's attorney. Felts wants us to appoint a neutral third-party to review his requests for parole. He further asks that we award him earned time credit under Utah Code section 77-27-5.4. And, finally, he requests that we award him money damages because, he argues, he has been incarcerated illegally.

We deny these motions. We do not investigate claims of attorney misconduct; the Utah State Bar Office of Professional Conduct does. *See In re Discipline of Lundgren*, 2015 UT 58, ¶ 1, 355 P.3d 984. Nor do we appoint people to the Board, *see* UTAH CODE § 77-27-2(1)(b), or award earned time credits, *see id.* § 77-27-5.4. Felts has failed to identify any rule or other authority that would allow us to impose sanctions against the Board for actions unrelated to the Board's conduct in the appeal before this court. To the extent Felts argues that we should review the Board's parole decisions, we do not have appellate jurisdiction to hear such claims. *See id.* § 77-27-5(3)(a). Felts does not assert that the lack of appellate jurisdiction violates his right to an appeal. Nor does he ask that we treat these sanctions motions as petitions for extraordinary writ, and we decline to do so *sua sponte*.

court of appeals' decision for correctness. *State v. Hansen*, 2002 UT 125, ¶ 25, 63 P.3d 650.

**ANALYSIS**

¶17 Felts disagrees with the court of appeals' construction of the post-amendment statute. He first contends that the amendments give the district court the authority to review the Board's restitution order. He next argues that the amendments are retroactive and, as a result, the district court has jurisdiction to review the Board's order.

I. EVEN AFTER THE AMENDMENTS, THE DISTRICT COURT LACKS STATUTORY AUTHORITY TO REVIEW THE BOARD'S RESTITUTION ORDER

¶18 Felts argues that the Legislature amended the restitution scheme in a way that evinces an intent to permit judicial review of the Board's restitution order. He points to the fact that the amendments removed restitution determinations from the Board's authority, thereby giving district courts the exclusive authority to order restitution. *See* UTAH CODE § 77-27-5(1)(a), (b). He also relies on the amendments' removal of the provision prohibiting judicial review of Board restitution orders and the amended provision indicating that specific Board determinations, not including restitution, are not subject to judicial review. *See id.* § 77-27-5(3).

¶19 The State argues that removal "of the prohibition on judicial review of Board restitution orders did not simultaneously give district courts the jurisdiction in criminal cases to review or set aside a Board order." The State contends that because the Legislature removed restitution determinations from the Board's authority, it removed restitution from the list of Board decisions that are final and not subject to judicial review. The State maintains that this was not an independent grant of judicial review to district courts to review Board restitution orders.

¶20 The State agrees with Felts that the amendments give district courts the exclusive authority to order restitution. But the State asserts that granting district courts the exclusive authority to order restitution is not the same as granting district courts the authority to review another entity's restitution order.

¶21 "The court's goal in statutory interpretation is to ascertain the intent of the legislature, the best evidence of which is the plain language of the statute itself." *State v. Miller*, 2023 UT 3, ¶ 65, 527 P.3d 1087 (cleaned up). We assume "that the legislature used each

term advisedly according to its ordinary and usually accepted meaning." *Hutter v. Dig-It, Inc.*, 2009 UT 69, ¶ 32, 219 P.3d 918. We also "seek to give effect to omissions in statutory language by presuming all omissions to be purposeful," *Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 14, 267 P.3d 863, and "read the plain language of a statute as a whole," *State v. Harker*, 2010 UT 56, ¶ 12, 240 P.3d 780 (cleaned up).

¶22 Before the amendments went into effect, the Board could determine when and under what conditions qualifying persons "[could] be released upon parole, pardoned, *ordered to pay restitution*, or have their fines, forfeitures, or restitution remitted, or their sentences commuted or terminated." UTAH CODE § 77-27-5(1)(a) (2015) (emphasis added). "Decisions of the board in cases involving paroles, pardons, commutations or terminations of sentence, *restitution*, or remission of fines or forfeitures [we]re final and [we]re not subject to judicial review." *Id.* § 77-27-5(3) (2015) (emphasis added).

¶23 The amendments removed the Board's authority to determine restitution. The Board can now decide "when and under what conditions an offender's conviction may be pardoned or commuted." *Id.* § 77-27-5(1)(a). It can also determine

> when and under what conditions a[] [qualifying] offender . . . may: (i) be released upon parole; (ii) have a fine or forfeiture remitted; (iii) have the offender's criminal accounts receivable remitted . . . ; (iv) have the offender's payment schedule modified . . . ; or (v) have the offender's sentence terminated.

*Id.* § 77-27-5(1)(b). But the Board can no longer determine and order restitution.

¶24 Additionally,

> [a] decision by the board is final and not subject for judicial review if the decision is regarding: (i) a pardon, parole, commutation, or termination of an offender's sentence; (ii) the modification of an offender's payment schedule for restitution; or (iii) the remission of an offender's criminal accounts receivable or a fine or forfeiture.

*Id.* § 77-27-5(3)(a).

¶25 The amendments' plain language does not give the district court the authority to review the Board's restitution order. Notably, the statutes governing district court orders for restitution and the Board's authority do not contain any language expressly giving district courts that authority. *See id.* § 77-38b-205; *see id.* § 77-27-5. Felts instead argues that we should interpret the Legislature's removal of the prohibition on judicial review of Board restitution orders as a signal that the Legislature intended for district courts to conduct such review.

¶26 While we sometimes infer meaning from the removal of statutory language, *see T-Mobile USA, Inc. v. Utah State Tax Comm'n*, 2011 UT 28, ¶ 27, 254 P.3d 752, we do not see the same meaning in the Legislature's removal of the prohibition on judicial review that Felts does. This case also does not resemble those in which we have interpreted the removal of language to confer additional meaning.

¶27 In *T-Mobile*, for example, we addressed whether the district court, acting as a tax court, correctly excluded T-Mobile's accounting goodwill from property tax. *Id.* ¶ 19. We held that T-Mobile's accounting goodwill was not exempt from property tax under the 1998 Utah Property Tax Act (1998 Act) but that the Utah Constitution prohibited taxing goodwill as property. *Id.* On our way to concluding that the 1998 Act did not exempt accounting goodwill from property tax, we considered it significant that the Legislature removed the term "goodwill" from the enumerated categories of property exempt from property tax when it passed the 1998 Act. *Id.* ¶ 27.

¶28 We cannot infer here that because the Legislature removed restitution from the list of Board decisions that are final and not subject to judicial review, the Legislature intended to give district courts authority to review Board restitution orders. That is because when we read the amendments together, we agree with the court of appeals that removing restitution from Utah Code section 77-27-5(3) was done "merely for clarity and consistency." Indeed, the Legislature would not have kept restitution in the list of Board decisions that remain final and not subject to judicial review when, under the amendments, the Legislature removed the Board's authority to determine restitution. Under Felts's theory, any decision that the Board previously had statutory authority to make, but is no longer permitted to make, would be reviewable by the district court. We, like the court of appeals, do not see that the amendments support that reading.

¶29 Felts points to *State v. Garcia*, 2018 UT 3, 416 P.3d 1118, and *State v. Schultz*, 2002 UT App 297, 56 P.3d 974, to support his construction of the amendments. But his use of these cases is unpersuasive.

¶30 In *Garcia*, we reviewed a court of appeals decision that affirmed a district court's determination that it did not have jurisdiction to decide a defendant's motions challenging a Board-issued restitution order. 2018 UT 3, ¶ 1. We affirmed and held that "restitution decisions of the board are not subject to judicial review." *Id.* ¶ 2 (cleaned up). We relied on Utah Code section 77-27-5(3), which at the time prohibited district courts from reviewing Board restitution orders. *See id.* ¶¶ 10–11 ("That clear and simple directive control[led] the disposition of th[e] case.").[5]

¶31 Felts maintains that "[t]he legislature's removal of the controlling statutory language flips the *Garcia* analysis." He contends that under the amendments, "relevant language suggested that the district court did have jurisdiction to review a restitution order from the Board."

¶32 But Felts's argument assumes what it sets out to prove. He has not persuaded us that the amendments give district courts the authority to review Board restitution orders. While in *Garcia* the controlling statute contained clear language precluding the court's review of the Board's order, the amendments here do not contain any language that gives the district court the authority to review the Board's order. *Garcia*, at bottom, tells us little about how to decide this case.

---

[5] At the same time, we disagreed with the court of appeals "[t]o the extent . . . [it said] that district judges are not exercising 'jurisdiction' in entering a Parole Board restitution order on the judgment docket." *Garcia*, 2018 UT 3, ¶ 14. But we did not see this as a basis for reversal. *Id.* ¶ 15. Rather, we clarified that:

> The jurisdiction exercised by the sentencing court in a case like . . . [Garcia's] is limited. The judge is directed only to perform a ministerial act—to enter the restitution order on the judgment docket. And the judicial power to perform that ministerial act does not encompass the power to review the legality or merits of the underlying restitution order.

*Id.*

¶33   In *Schultz*, the court of appeals reversed a restitution order the Board issued, which the sentencing court then entered on its docket. 2002 UT App 297, ¶ 14. The court of appeals held that the Board entered its restitution order at a time when it no longer had jurisdiction to do so. *Id.* Specifically, "[t]he Board executed the restitution order . . . over a month after Schultz's sentence and parole were terminated." *Id.* ¶ 11.

¶34   The court of appeals did not discuss or cite Utah Code section 77-27-5(3)—the provision that instructed that Board restitution orders were not subject to judicial review. *See id.* ¶¶ 7– 20. Because that provision controlled in *Garcia*, we repudiated "*Schultz* (and any other cases along similar lines) to the extent it [ran] contrary to the clear terms of [that] statute." 2018 UT 3, ¶ 21.

¶35   Felts asserts that "the [restitution] statute now contemplates that a court could set aside an invalid restitution order in a situation like *Schultz*." For the reasons discussed above, this is incorrect. The Board's actions in *Schultz* are also distinguishable, as the Board determined restitution when it no longer had jurisdiction over the defendant. *See* 2002 UT App 297, ¶¶ 11, 14. Felts does not claim that this is what happened here. Nor could he on the record before us.

¶36   Felts finally asserts that a restitution scheme that does not permit district courts to review Board restitution orders is constitutionally problematic. He does not bring a direct constitutional challenge to the scheme, but he proposes that we apply the constitutional avoidance canon to help us interpret the amendments.

¶37   Felts misplaces his reliance on this canon. For "the constitutional avoidance canon to even apply, the statute must be genuinely susceptible to two constructions . . . ." *Utah Dep't of Transp. v. Carlson*, 2014 UT 24, ¶ 24, 332 P.3d 900 (cleaned up). The canon compels us to "reject[] one of two plausible constructions of a statute on the ground that it would raise grave doubts as to its constitutionality." *Id.* ¶ 23. Moreover, "[p]rinciples of constitutional avoidance are not an invitation for us to break faith with [a] statute's text. Even when we are trying to save a statute from constitutional concerns, we are not at liberty to rewrite" it. *State v. Hatfield*, 2020 UT 1, ¶ 39, 462 P.3d 330 (cleaned up).

¶38   Here, Felts has not identified two plausible constructions of the amendments. The constitutional avoidance canon therefore does not apply. We stick to the amendments' plain language and

await a direct constitutional challenge to the restitution scheme should a party choose to attempt to shoulder the burden of establishing a constitutional violation.

¶39 Because the district court does not have jurisdiction to review the Board's restitution order, the State correctly notes that Felts "can find relief . . . only through extraordinary writ" under rule 65B of the Utah Rules of Civil Procedure. *See Garcia*, 2018 UT 3, ¶ 16 n.3 (explaining that we were "not foreclosing Garcia's right to challenge the Parole Board's order through a petition for extraordinary writ"); *see also* UTAH R. CIV. P. 65B(a) (authorizing a person challenging Board actions to petition the court for extraordinary relief "[w]here no other plain, speedy and adequate remedy is available"). Felts has not sought that relief here.[6]

## CONCLUSION

¶40 The court of appeals correctly affirmed the district court's determination that it lacked jurisdiction to review the Board's restitution order. We affirm the court of appeals.

———————————

[6] Felts also argues that the court of appeals erred when it concluded that the amendments have no retroactive effect. We need not reach that argument because the district court cannot review the Board's order regardless of whether the amendments are retroactive.