**2022 UT 25**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

In the Matter of the Discipline of DOUG BERNACCHI, #10336

OFFICE OF PROFESSIONAL CONDUCT,
*Appellee*,

*v.*

DOUG BERNACCHI,
*Appellant*.

No. 20210034
Heard: June 6, 2022
Filed June 23, 2022

On Direct Appeal

Third District, Salt Lake City
The Honorable Patrick W. Corum
No. 190907101

Attorneys:

Billy L. Walker, Emily A. Lee, and Barbara Townsend, Salt Lake City,
for appellee

Doug Bernacchi, Charlottesville, Virginia, *pro se* appellant

ASSOCIATE CHIEF JUSTICE LEE authored the opinion of the Court, in
which JUSTICE PEARCE, JUSTICE PETERSEN, JUDGE POHLMAN,
and JUDGE HARRIS joined.

Having recused himself, CHIEF JUSTICE DURRANT does not participate
herein; COURT OF APPEALS JUDGE RYAN HARRIS sat.

JUSTICE DIANA HAGEN became a member of the Court on May 18,
2022, after the oral argument panel was assigned, and accordingly
did not participate; COURT OF APPEALS JUDGE JILL POHLMAN sat.

ASSOCIATE CHIEF JUSTICE LEE, opinion of the Court:

¶1 This is an appeal in an attorney discipline matter involving Doug Bernacchi. Bernacchi was suspended by the Indiana Supreme Court in October 2017. The Illinois Bar subsequently suspended him in a reciprocal disciplinary proceeding. It then notified the Utah Office of Professional Conduct (OPC) of the disciplinary actions against Bernacchi in Illinois and Indiana. And OPC initiated its own disciplinary action in response to the notice, asserting that Bernacchi was subject to reciprocal sanctions in Utah under rule 14-522 of the rules governing the State Bar. SUP. CT. R. PRO. PRAC. 14-522 (2019).[1]

¶2 The district court entered a one-year reciprocal suspension against Bernacchi on two alternative grounds. It first concluded that Bernacchi had "defaulted" when he abruptly withdrew from a hearing on the parties' cross-motions for summary judgment—striking Bernacchi's answer and pleadings and entering default judgment. In the alternative, it concluded that a reciprocal suspension was appropriate on the merits—upholding the basis of OPC's charges and rejecting a series of Bernacchi's grounds for opposing them.

¶3 On this appeal, Bernacchi challenges the district court's judgment in a rambling diatribe[2] that fails to engage with the district

---

[1] Our Rules of Professional Practice were amended and renumbered effective December 15, 2020. We cite to and apply the rules in effect at the time of the disciplinary proceedings in Indiana—that is, when Bernacchi was "publicly disciplined by another court" in October 2017 and the reciprocal discipline rule would have been triggered. SUP. CT. R. PRO. PRAC. 14-522(a), *amended and renumbered as* SUP. CT. R. PRO. PRAC. 11-567 (2020); *see also In re J.A.L.*, 2022 UT 12, ¶ 18 n.5, 506 P.3d 606 ("[W]e apply the law as it exists at the time of the event regulated by the law in question." (alteration in original) (citation omitted) (internal quotation marks omitted)).

[2] Bernacchi's briefing repeatedly stoops to name-calling and motive-questioning. *See, e.g.*, Brief of Appellant at 40 (calling OPC staff "Nazis"); Reply Brief of Appellant at 22 ("[T]he leadership of the Utah State Bar and the OPC . . . can't see or shoot straight out there in pioneer land."); Brief of Appellant at 16 (characterizing the OPC's efforts as "gaslighting the third district court judge, this Court, and [Bernacchi]"); *id.* at 26–27 (asserting that the Indiana

(continued . . .)

court's analysis on a number of points.[3] The legal basis for Bernacchi's appeal is often lost in the mire of his caustic rhetoric,

---

disciplinary commission "tricked" and "entrapped" him and engaged in racial bias against him); *id.* at 28 (characterizing the December 2020 summary judgment hearing as a "sham"); *id.* at 29 (calling this disciplinary action "pure harassment"); *id.* at 30 (asserting that OPC "lied" to Judge Corum and engaged in "actual fraud"); *id.* at 32 (stating that Judge Corum "retaliated" against him for leaving the summary judgment hearing by entering default judgment); *id.* at 45 (asserting that Judge Corum was "over-focused on his agenda-driven, rigged-justice 'performance art'"); *id.* at 53 (stating that Judge Corum "acted[] above the law" and "had been improperly influenced by [OPC]").

And in so doing, Bernacchi's briefing runs afoul of our rules of procedure and standards of professionalism and civility. UTAH R. APP. PROC. 40(b)(1) (authorizing discipline and sanctions for submitting filings that are presented for "any improper purpose" including to "harass"); SUP. CT. R. PRO. PRAC. 14-301(3) (establishing that lawyers "should avoid hostile [or] demeaning" words and "shall not, without an adequate factual basis, attribute to other counsel or the court improper motives, purpose, or conduct"). These and other moves by Bernacchi could call for an order striking offending portions of the brief. UTAH R. APP. PROC. 24(i) (establishing that the court "may strike or disregard a brief that contains burdensome, irrelevant, immaterial, or scandalous matters"). Or they could justify a referral to our Professionalism and Civility Counseling Board. SUP. CT. R. PRO. PRAC. 14-303(b)(1). But the former seems unnecessary now that we have called out the bad behavior in a published opinion. And the latter is probably a moot point for Bernacchi, who is already resigned from the practice of law in Utah and proclaims that he is not "ever likely to practice law in Utah, has . . . retired, and moved from Utah long ago" to which "he [is] never returning." Brief of Appellant at 33, 50; *see also* Appellant's Motion for Summary Disposition at 23 (describing himself as a "long-retired" lawyer); Reply Brief of Appellant at 22–23 (stating that he has not practiced law "anywhere" for "many years" and is "fully retired and . . . not working").

[3] *See Living Rivers v. Exec. Dir. of the Utah Dep't of Env't. Quality*, 2017 UT 64, ¶¶ 41–43, 50–51, 417 P.3d 57 (declining to reach the "important questions" of the appeal where the appellant "utterly fail[ed] to engage with the substance of the [lower tribunal's]

(continued . . .)

much of which is directed at relitigating the Indiana proceeding or at maligning various actors in the judicial system. These flourishes are hardly helpful to our task of rendering an evenhanded assessment of the legal issues presented for our decision. Yet that is still our job, and one we take seriously even when litigants sling mud at the court and call judges names[4] instead of engaging in measured legal analysis.

¶4 As best we can tell, Bernacchi advances five grounds for challenging the imposition of a reciprocal sanction against him. He asserts: (1) that the district court lacked subject-matter jurisdiction; (2) that OPC lacked power to suspend him because he had already "resigned" his status as an attorney; (3) that reciprocal sanctions are improper due to an alleged failure of "due process" in the underlying Indiana proceedings; (4) that OPC's charges are time-barred; and (5) that the district court had no basis for entering default judgment, particularly in the absence of an opportunity for Bernacchi to brief that question.

¶5 OPC vaguely asserts that the district court "was correct in entering reciprocal discipline against Mr. Bernacchi." But it presents no legal analysis of a basis for default judgment under our rules of civil procedure, and offers no response to Bernacchi's assertion that the court erred in entering default without first giving Bernacchi an opportunity to be heard on the matter. Instead, OPC defends the

---

ruling"); *Federated Cap. Corp. v. Shaw*, 2018 UT App 120, ¶ 20, 428 P.3d 12 (clarifying that an appellant who "does not meaningfully engage with the district court's reasoning . . . falls short of demonstrating any error on the part of the district court" (citation omitted)); *see also* UTAH R. APP. PROC. 24(a)(8) (requiring the appellant to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal").

[4] Name-calling unfortunately abounds in our increasingly tribal culture. But for any who may be wondering, it won't help your cause in our justice system. You may privately question a judge's wisdom, sanity, or consistency. You may even be inclined to reduce your animus to an epithet aimed at a member of the court you are appearing in. *See* Appellant's letter to the Court (April 4, 2022) (calling one of us a "flip flopping Justice"). That might make you feel better in the moment. But we can assure you—it's not a best practice in appellate briefing.

district court's judgment on the merits—offering its position on each of the first four grounds listed above.

¶6 We affirm under the standard of review that governs our decisions in attorney discipline cases. *See Utah State Bar v. Lundgren (In re Discipline of Lundgren)*, 2015 UT 58, ¶ 9, 355 P.3d 984 (declaring that this court "review[s] district court findings in attorney discipline matters with less deference" than it affords in other cases, and "retain[s] the right to draw different inferences from the facts in order to make an independent determination of the correctness of the discipline the district court imposed" (citations and internal quotation marks omitted)). We uphold the jurisdiction of the district court and the OPC, conclude that Bernacchi has failed to show that there was a due process problem sufficient to defeat the imposition of a reciprocal sanction, and hold that his time-bar defense was forfeited because he did not preserve it in the district court. In so doing, we identify potential concerns with the imposition of a default judgment on this record, but conclude that any error was harmless in light of our agreement with the district court's analysis of the merits.

I

¶7 Bernacchi asserts that the district court lacked subject-matter jurisdiction over an attorney discipline matter that is committed to the jurisdiction of this court under the Utah Constitution. He then argues that OPC lacked the authority to prosecute him under rule 14-506 of our rules of professional practice. He also contends that the Indiana proceeding was an improper basis for a reciprocal sanction under rule 14-522(d) in light of certain "due process" defects in the Indiana action. And he claims that OPC's charges against him are time-barred under rule 14-529 (2019). We reject each of these challenges to the district court's order.

A

¶8 Bernacchi's challenge to the district court's jurisdiction is rambling and confusing. But it seems to start with the assertion that this court has constitutionally established jurisdiction to "govern the practice of law." UTAH CONST. art. VIII, § 4. And it appears to pivot to the proposition that neither the legislature nor this court is "permitted" to confer jurisdiction on the district court. Among other assertions, Bernacchi claims that the legislature ran afoul of article VIII, section 4 when it enacted Utah Code section 78A-5-102(3)—a provision that recognizes that "[t]he district court has jurisdiction

over matters of lawyer discipline consistent with the rules of the Supreme Court."

¶9 Bernacchi cites *Barnard v. Utah State Bar*, 857 P.2d 917 (Utah 1993), for the proposition that this court's jurisdiction over attorney discipline matters is exclusive—and preclusive of the jurisdiction of the district court. And because he claims that he had resigned or was administratively suspended by the Utah Bar before OPC sought a reciprocal sanction against him, he also asserts that there is no jurisdiction in an attorney discipline matter over a non-attorney.

¶10 None of these arguments holds water. First, article VIII, section 4 admittedly confers on this court the duty to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4**.** But the *legislature* has not stripped this court of jurisdiction, or in any way run afoul of this provision. In enacting Utah Code section 78A-5-102(3), the legislature was not abrogating the supreme court's constitutional jurisdiction over attorney discipline cases. It was just acknowledging *this court's rules* designating the district court as an initial forum for fact-finding and imposition of discipline, if necessary. *See* UTAH CODE § 78A-5-102(3) (stating that "[t]he district court has jurisdiction over matters of lawyer discipline *consistent with the rules of the Supreme Court*" (emphasis added)); SUP. CT. R. PRO. PRAC. 14-511(a), (g) (2019), *amended and renumbered as* 11-536 (December 15, 2020) (providing for initial district court jurisdiction over attorney discipline matters, subject to our appellate review).

¶11 The *Barnard* case is not to the contrary. In *Barnard*, we were asked to decide whether the district courts had jurisdiction over a declaratory judgment action aimed at establishing that an attorney's use of paralegals did not constitute the unauthorized practice of law. *Barnard*, 857 P.2d at 918. The case arose prior to our adoption of a rule delegating authority to the district courts. *Id.* at 919 n.5. And the majority in *Barnard* held that the district courts lacked subject-matter jurisdiction to decide a matter that was committed to the exclusive jurisdiction of the supreme court at the time that case was filed. *Id.*

¶12 Our court adopted the new rule during the pendency of the *Barnard* case. *Id.* at 919 n.5. And that development defeats Bernacchi's reliance on this decision. The holding in *Barnard* is distinguishable on its face. It is based on a legal regime that prevailed prior to our adoption of a rule designating the district courts as an initial forum for attorney discipline matters. Bernacchi

fails to address or even acknowledge that point. And his reliance on *Barnard* fails on this basis.

¶13 Bernacchi invokes the dissent in *Barnard* in support of an assertion that this court lacks the power to involve the district courts in attorney discipline. In dissent, Justice Stewart asserted that the "language" of article VIII did not "confer[]" on this court "the power either to control the jurisdiction of district courts or to confer jurisdiction on district courts." *Barnard*, 857 P.2d at 921 (Stewart, J., dissenting). "That power," in Stewart's view, "lies within the province of the Legislature," *id.*—a point the majority addressed only by noting that the rule delegating authority to the district courts was not in effect at the time the case was filed, and thus "ha[d] no bearing on the outcome." *See id.* at 919 n.5.

¶14 Bernacchi does not develop Justice Stewart's point in his briefing. And the point is difficult to reconcile with the text of the Utah Constitution. Article VIII, section 4 confers broad power on this court to "govern the practice of law, including admission to practice law and the conduct and discipline of persons admitted to practice law." UTAH CONST. art. VIII, § 4. That greater power may encompass the lesser power to involve the district courts in our process of governing the practice of law and of resolving disciplinary proceedings. And our rule, in any event, does not appear to "confer jurisdiction on district courts" that they do not otherwise possess.

¶15 Our district courts have "original jurisdiction in all matters except as limited by this constitution or by statute." UTAH CONST. art. VIII, § 5. No constitutional or statutory provision excludes attorney discipline matters from the district courts' original jurisdiction. To the contrary, as noted above, the legislature has confirmed that the district courts have "jurisdiction over matters of lawyer discipline consistent with the rules of the Supreme Court." UTAH CODE § 78A-5-102(3). And Bernacchi's argument fails on that basis.

¶16 Under our law as it now stands, this court cannot be viewed as intruding on the prerogative of the legislature "to control the jurisdiction of district courts or to confer jurisdiction on district courts." *Barnard*, 857 P.2d at 921 (Stewart, J., dissenting). And Bernacchi's reliance on the *Barnard* dissent accordingly fails.

¶17 That leaves only Bernacchi's assertion that there can be no subject-matter jurisdiction here because he is not an attorney admitted to practice in Utah. This argument is simply mistaken. It confuses the merits with jurisdiction. And it misses the well-settled point that a court always has jurisdiction to determine its

jurisdiction. *See Union Pac. R.R. v. Utah Dep't of Transp.*, 2013 UT 39, ¶ 13, 310 P.3d 1204.[5]

B

¶18 Bernacchi's next argument is a challenge to the authority of OPC over a person who is no longer actively licensed to practice law in Utah. The focus of this argument is on the language of rule 14-506—which speaks generally to the "disciplinary jurisdiction of the Supreme Court and the OPC." SUP. CT. R. PRO. PRAC. 14-506(a) (2019). By rule, such jurisdiction extends broadly to "any lawyer admitted to practice law in Utah," to "any lawyer admitted but currently not properly licensed to practice in Utah," and to "any formerly admitted lawyer" who violates a rule of professional conduct "where the attorney was licensed to practice or was practicing law at the time of the alleged violation." *Id.* In both the district court and on appeal, Bernacchi was focused solely on the language of this rule. And the district court followed suit. It concluded that "14-506 does apply to Mr. Bernacchi and his status as a once-admitted lawyer" since the rule covers persons "formerly admitted" to practice who violate a rule of professional conduct "where the attorney was licensed to practice or was practicing law at the time of the alleged violation."

¶19 Both the parties and the district court proceeded on the premise that the reciprocal sanction rule—rule 14-522—covers any and all persons subject to rule 14-506. And we can see a plausible basis for that view. Rule 14-522(a) requires OPC to "obtain a certified

---

[5] In passing, Bernacchi also vaguely asserts that the district court lacked personal jurisdiction. But on appeal and in the district court, Bernacchi did little more than mouth the words "personal jurisdiction." He provided no substantive analysis—no identification of a governing legal principle, or application of such principle to the facts of this case. That is insufficient. *See* UTAH R. APP. PROC. 24(a)(8) ("[Briefs] must explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."); *see also Hill v. Superior Prop. Mgmt. Servs.*, 2013 UT 60, ¶ 47, 321 P.3d 1054 (holding that neither district nor appellate courts are "depositor[ies] in which [a party] may dump the burden of argument and research" and declining to reverse the district court "for failing to undertake that task" on behalf of a party (second alteration in original) (citations omitted) (internal quotation marks omitted)).

copy" of a disciplinary order entered by another regulatory body "having disciplinary jurisdiction" over any "lawyer within the jurisdiction of the Supreme Court." *Id.* 14-522(a). And that language could be viewed as a cross-reference to the jurisdictional coverage provided in rule 14-506—indicating that rule 14-522 likewise extends not just to a "lawyer admitted to practice in Utah" but also to a "lawyer admitted but currently not properly licensed to practice in Utah" and to a "formerly admitted lawyer" who violates a rule of professional conduct "where the attorney was licensed to practice or was practicing law at the time of the alleged violation." *Id.* 14-506(a).

¶20 Elsewhere, rule 14-522 seems to provide for reciprocal sanctions only for a "lawyer admitted to practice in Utah." *Id.* 14-522(a). And that language could be read as limiting the availability of reciprocal sanctions to a subset of all persons subject to the general jurisdiction of this court and OPC under rule 14-506. A "lawyer admitted to practice," on this reading, could be viewed as encompassing only those who are currently admitted *to practice*— those with an active license. That reading could be reinforced by the distinct categories of persons set forth in the coverage of rule 14-506, in language that seems to describe a "lawyer admitted to practice in Utah" in contrast to a "formerly admitted lawyer."

¶21 We flag this ambiguity for our advisory committee, since we see enough ambiguity here to merit some clarification or cleanup of the language of our rules.[6] And frankly, we can see arguable policy grounds for a clarification in either direction—for reinforcing the view that the coverage of both rules is coextensive, or for establishing that only currently admitted lawyers are subject to reciprocal sanctions. With that in mind, we reserve the policy decision for resolution on another day, after studied input from our advisory committee.

---

[6] The text of the reciprocal sanction rule has been altered in a recent amendment to our rules. *See* SUP. CT. R. PRO. PRAC. 11-567 (2020). But the new language may provide an even stronger basis for a mismatch in coverage, as it speaks of reciprocal sanctions for "a Lawyer licensed to practice in Utah." *Id.* Perhaps both the old rule and the new one are impliedly meant to extend to anyone who was *ever* "admitted" or "licensed" to practice in Utah. But the text of the rule is at least confusing. And it at least merits some cleanup.

¶22 We need not and do not resolve any possible mismatch between the coverage of rules 14-506 and 14-522 here because Bernacchi has not preserved or argued that there is any such mismatch, and there is at least a plausible argument that the two rules are coextensive. For that reason, we need only review the district court's determination that Bernacchi is subject to rule 14-506 because he is at least a lawyer "formerly admitted" to practice who violated a rule of professional conduct "where the attorney was licensed to practice or was practicing law at the time of the alleged violation." *Id.* 14-506(a). And we can easily affirm that conclusion. Bernacchi has not addressed or refuted the district court's analysis. So we can accept his factual assertions about his status—as a lawyer who had effectively resigned his status as a Utah lawyer at all relevant times—while still affirming the district court. We thus affirm on the basis of the district court's decision.

C

¶23 Bernacchi's due process argument is also rather hard to follow. A threshold point is clear: Bernacchi is not pleased with the imposition of the sanction against him in Indiana, as he rails at great length about alleged injustices and errors in the Indiana proceedings. *See, e.g.,* Brief of Appellant at 22–23 (asserting that "liability [in Indiana] was based on a perjury trap and duress" and the "process [was] flawed Constitutionally"); Reply Brief of Appellant at 5–11 (calling the Indiana process "a case of rigged justice" that "targeted" him "for so called 'death' without due process"). But this is not a forum for a collateral attack on the Indiana proceedings. It is an action for reciprocal discipline under our Rules of Professional Practice. To prevail on appeal, Bernacchi bears the burden of demonstrating error in the district court's imposition of a reciprocal sanction.

¶24 Bernacchi takes a step in the direction of our rules when he paints the cited problems in the Indiana case with the broad brush of an infringement of his right to "due process." Rule 14-522, after all, establishes an exception to the requirement of imposing "equivalent discipline" in Utah where "it clearly appears upon the face of the record from which the discipline is predicated that . . . the procedure was so lacking in notice or opportunity to be heard as to constitute a deprivation of due process." SUP. CT. R. PRO. PRAC. 14-522(d)(1) (2020).

¶25 Yet Bernacchi has fallen far short of carrying his burden of persuasion under the rule. A threshold burden of an appellant is to

identify and challenge the basis for the lower court decision on appeal. *Supra* ¶ 3 n.3. Bernacchi has failed to even acknowledge the basis for the district court's disposition of this claim—its conclusion that "four separate courts" (the Seventh Circuit Court of Appeals, the Indiana Supreme Court, a federal district court in Indiana, and the Illinois Supreme Court) had "already determined that Mr. Bernacchi was provided due process" in Indiana. And he has identified no basis for a determination that it was clear "upon the face of the record" in Indiana that Bernacchi's due process right to "notice" and an "opportunity to be heard" was infringed. SUP. CT. R. PRO. PRAC. 14-522(d)(1) (2020). The district court record includes at least two documents indicating that Bernacchi had notice and an opportunity to be heard—the Indiana Supreme Court Order, which imposed a suspension on Bernacchi; and the Hearing Officer's Findings of Fact and Conclusions of Law, which outlined that Bernacchi participated in the disciplinary process in Indiana, that he admitted to the allegations against him, and that he agreed to a sanctions hearing. Bernacchi does not address these documents, or present any argument rooted in the language of the operative rule. Besides his angry rants and vague complaints about an infringement of due process, he presents no reasoned basis for a conclusion that the alleged infringement of due process was clear "upon the face of the record" in Indiana. And his argument fails on that basis.[7]

D

¶26 Bernacchi's time-bar argument is easily disposed of. Bernacchi failed to preserve this defense in his answer or in any

---

[7] Bernacchi also seems to hint at a basis for an exception under rule 14-522(d)(3)—an exception that applies where "the misconduct established warrants substantially different discipline in Utah or is not misconduct in this jurisdiction." SUP. CT. R. PRO. PRAC. 14-522(d)(3). He seems to be attempting to invoke this exception when he asserts that "Utah has never found strict attorney misconduct for subcontracting staff, paralegal firms, or temps"—activity that, in Bernacchi's view, formed the basis for the Indiana sanction. But Bernacchi offers no reasoned, authority-rooted analysis in support of this assertion. And he has accordingly failed to carry his burden of persuasion on appeal. *See supra* ¶ 17 n.5 (discussing that the parties—not the court— carry the burden of argument and research on appeal under our rules and case law).

other pleadings in the district court.[8] He raised it for the first time on appeal. And he has not identified or argued in favor of any exception to our rules of preservation. We reject this argument on this basis. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 ("When a party fails to raise and argue an issue in the trial court, it has failed to preserve the issue, and [we] will not typically reach that issue absent a valid exception to preservation." (citation omitted)).

II

¶27 Bernacchi also questions the basis for the imposition of a default judgment against him, particularly in the absence of a motion or an opportunity to be heard on the matter. He may have a point here. At a bare minimum, Bernacchi should have been afforded an opportunity to brief this issue before the court imposed a default judgment. And the district court entered no findings or conclusions on the basis for imposing a sanction of default. On such a record, it is not apparent that Bernacchi's admittedly intemperate, uncivil behavior and decision to abruptly leave the summary judgment hearing were an adequate basis for a default judgment. *See* Utah R. Civ. P. 10(h) (stating that Utah courts are given authority to "strike and disregard all or any part of a pleading or other paper that contains redundant, immaterial, impertinent or scandalous matter"); *see also* Utah R. Civ. P. 55(c) (permitting the court to set aside an entry of default "[f]or good cause").

¶28 We can assume (without deciding) that the district court may have erred in entering a default judgment on this record. That still would not be a basis for reversal. Any such error is harmless given that the district court proceeded to provide an independent, adequate basis for imposition of a reciprocal sanction against Bernacchi on the merits. For that reason, we affirm despite our misgivings with the manner in which the district court arrived at its

---

[8] Bernacchi made bare assertions to the district court that the OPC disciplinary process was "untimely" and that there was a statute of limitations problem. But Bernacchi did not refer to the applicable statute of limitations rule or the relevant limitations period in the proceedings below. *See* Sup. Ct. R. Pro. Prac. 14-529. In so doing, he failed to present the substantive legal analysis required to preserve an issue for appeal. *See State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443 (holding that a party must "raise *and argue* an issue" to preserve the issue in the district court (emphasis added) (citation omitted)).

alternative assertion that it was treating Bernacchi's misconduct as a basis for a default judgment.

———————